

**FILED**
Jan 12 2016, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| **APPELLANT PRO SE** | **ATTORNEYS FOR APPELLEE** |
| Christopher Rondeau<br>Pendleton, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Monika Prekopa Talbot<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Rondeau,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Respondent.* | January 12, 2016<br><br>Court of Appeals Case No.<br>49A02-1505-PC-427<br><br>Appeal from the Marion Superior<br>Court, Criminal Division 1<br><br>The Honorable Kurt Eisgruber,<br>Judge<br><br>Trial Court Cause No.<br>49G01-0904-PC-38670 |

**Bailey, Judge.**

# Case Summary

[1] Christopher Rondeau ("Rondeau") was convicted of Murder, a felony, and sentenced to fifty-five years imprisonment. Proceeding pro se, he subsequently

sought post-conviction relief.  Rondeau's petition for relief was denied, and he now appeals that denial.

We affirm.

# Issues

Rondeau presents numerous issues for our review.  We restate them as:

    I.    Whether the post-conviction court was biased against Rondeau;

    II.    Whether the post-conviction court abused its discretion when it

        a.  Permitted the State to substitute its response to Rondeau's request for admissions;

        b.  Permitted the State to submit proposed findings and conclusions after the deadline set forth by the post-conviction court; and

        c.  Did not grant Rondeau's requests to issue subpoenas for certain witnesses;

    III.    Whether the post-conviction court erred when it concluded that Rondeau did not receive ineffective assistance of trial counsel; and

    IV.    Whether the post-conviction court erred when it concluded that Rondeau did not receive ineffective assistance of appellate counsel.

# Facts and Procedural History

We take a portion of our statement of facts from this Court's prior decision in Rondeau's direct appeal after his conviction.

> Rondeau lived in Indianapolis with his grandmother, Franziska Stegbauer, and his great-uncle, Adolf Stegbauer, Franziska's deceased

husband's brother. Rondeau lived in a shed behind Franziska's house. Rondeau was thirty-nine years old, Franziska was seventy-seven, and Adolf was sixty-nine. On April 9, 2009, Rondeau had a couple of beers and Adolf had been drinking all day and into the night. At some point, a sword fight ensued between Rondeau and Adolf, and Franziska intervened.

During the fight, Franziska was stabbed in her left armpit. Although only "a little bit of dried blood" was visible, the injury caused a "massive hemorrhage within her left cavity." Tr. pp. 85, 484–85. The stab wound "hit the heart—the anterior part of the left ventricle, caused some bleeding around the heart and then entered into the right hilar region where it caused some hemorrhage around the right lung here." *Id.* at 484. Adolf was stabbed at least ten times, suffering injuries to his hand, arm, abdomen, head, heel, foot, and shoulder. Rondeau was stabbed once on the underside of his arm.

At 12:58 a.m., Rondeau called 911. Rondeau reported, "my uncle was wasted, and he attacked me with a sword." Ex.3. He stated, "So I attacked. I took it from him and hit him back with it." *Id.* He continued, "And then, my grandma got involved, and she's on the floor. Everybody's bleeding." *Id.* When asked if Franziska was awake, Rondeau said, "I have no idea." *Id.* Rondeau stated that his glasses had been knocked off, and he could not see. Rondeau confirmed that everyone was awake and breathing but stated that they were all wounded. Rondeau then stated that he was trying to put his contacts in.

When police arrived at the scene, Rondeau was standing outside flagging them down. Franziska was "on the ground unresponsive." Tr. p. 71. Adolf was in his bedroom. He was "alert and responsive but he was bloody." *Id.* at 72. Police could not communicate with Adolf because he only spoke German. When the first paramedic arrived, her engine crew was already performing CPR on Franziska. Franziska had been intubated "and they were breathing for her." *Id.* at 83. The paramedic observed that Franziska was "pulseless" and "already pale and pretty cold to the touch. There was no breathing." *Id.* In her report, however, the paramedic indicated there was "an irregular weak rhythm" and that Franziska's breathing rate was ten breaths per minute. *Id.* at 92. Franziska arrived at the hospital at 2:03 a.m. and was pronounced dead at 2:04 a.m.

At 3:00 a.m. on April 9, 2009, Indianapolis Metropolitan Police Department Officer Jeffery Patterson and another officer interviewed Rondeau at the hospital while his leg was chained to a hospital bed. Rondeau was advised of his *Miranda* rights and signed a written waiver of those rights. Rondeau told police that Adolf and Franziska collected swords and hung them on the wall as decoration. He said that right before he called 911, Adolf and Franziska were arguing in German and that Adolf retrieved a katana. According to Rondeau, Franziska tried to hold Adolf back, Adolf pushed her out of the way twice, and she fell to the floor. Rondeau said that Adolf hit him with the katana, that Rondeau retrieved a saber from the wall, and that he hit Adolf with it at least twice. Rondeau told police that he eventually was able to get the katana from Adolf, that he put both swords in the kitchen, and that Adolf went to his bedroom. Rondeau stated that, after he put the swords in the kitchen, he called 911, checked on Franziska and tried to perform CPR, checked on Adolf and gave him some paper towels, went to the shed to get his contacts because his glasses had been knocked off, and went back into the house to the bathroom to put his contacts in. Rondeau said the fight took place in the hallway, and he tried to wipe up some of the blood. Rondeau told police that Franziska was on the floor the entire time he had a sword and that she had been on the floor two to four minutes before he called 911. Rondeau indicated that he did not know Franziska had been stabbed and said it looked like she either had a stroke or a heart attack.

An autopsy revealed that the cause of Franziska's death was sharp force injury to the left chest. Adolf died on April 13, 2009. The cause of Adolf's death was sharp force injury to the abdomen that caused bacteria in his stomach to be released into his peritoneal and abdominal cavities and led to septic shock.

On April 15, 2009, the State charged Rondeau with Adolf's murder and Class C felony reckless homicide relating to Franziska's death. Prior to and during trial, Rondeau made motions to continue, motions to exclude, and motions for mistrial based on alleged discovery violations. At trial, over Rondeau's objection, the trial court admitted his statement to police into evidence. Despite his self-defense argument, the jury found Rondeau guilty of Adolf's murder. The jury found him not guilty of Franziska's reckless homicide.

*Rondeau v. State*, No. 49A02-1006-CR-694, slip op. at 2-5 (Ind. Ct. App. Mar. 21, 2011). This Court affirmed Rondeau's conviction.

[5] On October 12, 2011, Rondeau filed a petition for post-conviction relief. The petition was amended to encompass additional claims for relief on June 6, 2013.

[6] During the pendency of the post-conviction proceedings, Rondeau twice requested subpoenas for testimony from numerous individuals. On June 6, 2013, Rondeau requested subpoenas for testimony from Indianapolis Metropolitan Police Department Detective Daniel Bain ("Detective Bain"); his trial counsel, Travis Shields; his appellate counsel, Michael Fisher; four individuals known to Rondeau or his family, including Kevin Foster ("Foster"); Doctors Robert Bassett and Brian Sloan, who were Rondeau's treating physicians for injuries he incurred during the fight with Stegbauer; and former Marion County Prosecutor Carl Brizzi. The post-conviction court granted two of these requests—those for testimony from trial counsel and appellate counsel—but denied the remainder of Rondeau's requests without entering a finding with its reasoning for the denials.

[7] The post-conviction hearing commenced on August 6, 2013. During the hearing, the trial court heard testimony from Rondeau's trial counsel and from Foster, who appeared and provided testimony without the issuance of a subpoena. To allow for further testimony and argument, the hearing was continued to a later date.

[8] On September 30, 2013, after the first portion of the hearing on the petition for relief, Rondeau submitted a second set of requests for subponeas. In this second set of requests, Rondeau again requested testimony from his treating physicians and Detective Bain. Rondeau also requested subpoenas for testimony from a crime scene investigator and two technicians from the Indianapolis-Marion County Forensic Services Agency. The post-conviction court denied these with a finding stating its rationale that the requests were not ripe for consideration "unless or until the court hears from trial counsel as to the strategic and tactical decisions made during … representation of [Rondeau]." (App'x at 280.)

[9] The post-conviction hearing was continued to January 29, 2014, and was completed on February 25, 2014. At the end of the post-conviction hearing, the court requested proposed findings and conclusions from Rondeau and from the State. Rondeau timely submitted his proposed findings and conclusions. The State requested two enlargements of time that the court granted over Rondeau's objection. The court ultimately set November 21, 2014 as the date by which the State was required to submit its proposed findings and conclusions, but the State did not submit these until December 1, 2014.

[10] On April 30, 2015, the post-conviction court entered its findings and conclusions, which denied Rondeau's petition for relief.

[11] This appeal ensued.

# Discussion and Decision

## Bias

[12]    Rondeau argues that the post-conviction court was biased against him. "A trial court's adverse rulings on judicial matters do not indicate a personal bias toward a defendant that calls into question the trial court's impartiality." *Harrison v. State*, 707 N.E.2d 767, 790 (Ind. 1999). Expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality. *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

[13]    Here, the entirety of Rondeau's claim of bias centers upon the post-conviction court's adverse rulings against him on procedural matters. He characterizes some of these rulings as "intervention" on the part of the post-conviction court (Appellant's Br. at 9), but does not develop the argument any further. To the extent that he insists his bias claim is "about following the rules of procedure" (Appellant's Reply Br. at 1), he fails to identify any cognizable distinction between rulings and the trial court's decisions with respect to specific procedural rules. Our review of the record gives no indication of any personal bias on the part of the post-conviction court, and the presence of adverse rulings is not sufficient to establish bias. To the extent Rondeau's appeal challenges specific rulings on their merits, we address those in turn below.

# Conduct of Post-Conviction Proceedings

## Requests for Admission

[14] Rondeau contends that the post-conviction court erred when it permitted the State to file a substitute response, in the form of a signed copy to replace an unsigned copy, to Rondeau's requests for admissions.

[15] Trial Rule 36 governs the use of requests for admission in our trial courts. "A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(B) set forth in the request, including the genuineness of any documents described in the request." Ind. Trial Rule 36(A). "The matter is admitted" if a party does not respond to a request "within a period designated in the request, not less than thirty [30] days after service thereof or within such shorter or longer time as the court may allow." *Id.* Responses to requests for admission, whether served as "a written answer or objection," must be "signed by the party or his attorney." *Id.*

[16] "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." T.R. 36(B). "[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him." *Id.* Whether to grant a request to withdraw or amend admissions is a matter within the trial court's discretion. *Larson v.*

*Karagan*, 979 N.E.2d 655, 660 (Ind. Ct. App. 2012). We will reverse the court's decision only upon an abuse of that discretion. *Id.* Even where an abuse of discretion has occurred, we will not reverse the judgment where that error is harmless, that is, where the error has not prejudiced the substantial rights of the parties. T.R. 61.

[17] Here, Rondeau served requests for admission to the State on June 28, 2013. The State responded on July 11, 2013, but the State's responses were not signed as required by Trial Rule 36(A).[1] Rondeau brought this to the post-conviction court's attention on August 6, 2013, and the State subsequently filed a motion to substitute its prior responses with a set of signed responses. The court granted the State's motion, concluding that Rondeau was not prejudiced by the change. Rondeau filed an objection to the court's decision, and the court overruled the objection.

[18] Rondeau points out in great detail that the State did not adhere to the formal timelines set forth by the Trial Rules and the Marion County Local Rules for the submission of responses to requests for admission. But he has not established how the trial court's decision to permit the State to substitute its responses prejudiced his substantial rights in the underlying proceeding, nor how the trial court may have abused its discretion to permit an amendment

---

[1] Trial Rule 36(A) provides that a party to whom a request for admission has been directed must serve "upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." Failure to do so results in the request being deemed admitted.

under Trial Rule 36(B).  Indeed, except for a signature by a deputy prosecutor, the State's substitute responses to the requests for admission are identical in all respects to the initial, unsigned submission.  We cannot, then, conclude that the trial court abused its discretion when it granted the State's request to substitute its responses to Rondeau's requests for admissions.

## Findings and Conclusions

[19]   Rondeau also challenges the post-conviction court's decision to permit the State to belatedly file its proposed findings and conclusions.  The post-conviction court in this case granted the State two extensions of the date by which the State was required to submit its proposed findings and conclusion.  Ultimately, the court set a deadline of November 21, 2014, by which the State was to submit its proposed findings and conclusions.  The State did not submit its proposal until December 1, 2014, and Rondeau filed an objection, claiming that the court should have deemed the State to be non-responsive.  That the post-conviction court accepted the filing, Rondeau insists, "gave the State an unfair advantage." (Appellant's Br. at 11.)

[20]   Rondeau is correct that the State's submission failed to comply with a deadline. But while Rondeau states that the post-conviction court adopted the State's proposed findings and conclusions nearly verbatim, he does not articulate how that, or the State's late submission, prejudiced his substantial rights.  Nor does Rondeau establish what benefit would have accrued to him had the trial court recorded that the State "'failed to respond'" with a timely filed set of proposed findings and conclusions.  (Appellant's Reply Br. at 3.)  We accordingly find no

reversible error on this point. The same reasoning—that Rondeau has not established any prejudice—applies as well to his contention that the State failed to properly serve its second motion for an enlargement of time in which to file proposed findings and conclusions.

## Subpoenas

[21] Rondeau's final contention concerning the court's conduct of the post-conviction proceeding is that the court abused its discretion when it denied his requests for the issuance of subpoenas to certain potential witnesses.

[22] Our Post-Conviction Rules provide, in relevant part:

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

Ind. Post-Conviction Rule 1(9)(b).

[23] Here, Rondeau, proceeding pro se, requested subpoenas for numerous witnesses. The post-conviction court granted some of the requests, but denied others. The court denied requests to issue subpoenas for Detective Bain; several individuals who Rondeau claimed would have testified concerning the character of his victim, Adolf Stegbauer; the two physicians who treated Rondeau for injuries after his arrest; former Prosecutor Brizzi; a crime scene specialist, Matthew Whitt; and two forensic scientists, Sarah Klassen and

Tonya Fishburn. Rondeau claims that the post-conviction court's refusal was an abuse of discretion, arguing that (1) with respect to Rondeau's first set of requests for subpoenas, the court failed to comply with Post-Conviction Rule 1(9)(b)'s provision that a post-conviction court "enter a finding on the record" when it does not find that a witness's testimony would be relevant and probative; and (2) the court's denial of the subpoenas was improper because the testimony of each witness would be relevant and probative at the post-conviction stage.

[24] Rondeau is correct that the Post-Conviction Rules require a post-conviction court to enter a finding when denying a pro se petitioner's request for a subpoena, and it appears that the court here did not enter such a finding on Rondeau's first request. As with other procedural matters, Rondeau does not articulate how the court's purported error is a basis for reversal of the denial of his petition for post-conviction relief. And this Court has previously found no reversible error when a post-conviction court has denied a pro se petitioner's request for a subpoena without entering specific findings but "the issues are sufficiently presented for review and addressed by the parties." *Pannell v. State*, 36 N.E.3d 477, 487 (Ind. Ct. App. 2015), *trans. denied*.

[25] Moreover, we cannot conclude that the post-conviction court abused its discretion when it denied Rondeau's various requests for subpoenas. Post-conviction proceedings are not designed to permit attacks on witness credibility, but rather to address issues demonstrably unavailable at trial and on direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002).

[26] Rondeau's requested subpoenas, though framed as relevant to his claim that trial counsel was ineffective, were either not specific enough to establish the relevance of the proposed witness's testimony to the question of ineffectiveness, or were relevant only to matters available at trial or direct appeal. Rondeau's requests for subpoenas for testimony from individuals familiar with him and Stegbauer provided no information concerning what testimony these witnesses might provide. Rondeau's requests to subpoena Detective Bain pointed to inconsistencies in trial testimony of a lead detective compared to information in a probable cause affidavit, matters available for inquiry at trial. Rondeau's requests for testimony from forensic scientists and a crime scene specialist concerning the State's decisions on what items to submit for laboratory testing bore no apparent connection to the question of trial counsel's preparation and investigation. Rondeau's request for a subpoena to former Prosecutor Brizzi demonstrated no connection to any question related to ineffectiveness of counsel, and instead sought testimony concerning an isolated statement to the press. Finally, Rondeau's requests for subpoenas of the physicians who treated his injuries at the time of his arrest pertained to matters raised or best raised at trial: the specific nature and number of his injuries.

[27] Because none of these matters properly pertained to Rondeau's claimed bases for post-conviction relief, we find no abuse of discretion in the trial court's denial of the issuance of Rondeau's requested subpoenas.

# Ineffective Assistance of Trial Counsel

[28] We turn now to Rondeau's claim that his trial counsel was ineffective. Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland. Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.*

[29] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*,

753 N.E.2d 591, 603 (Ind. 2001). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[30] Post-conviction proceedings "are not intended and will not operate as a 'super-appeal' for the convicted." *Ben-Yisrayl v. State*, 753 N.E.2d 649, 653 (Ind. 2001). Rather, post-conviction proceedings "provide a narrower remedy" for collateral challenges to a conviction. *Id.* To successfully obtain post-conviction relief, the petitioner must establish grounds for relief by a preponderance of the evidence. *Id.* Where a petitioner appeals from the denial of a petition for post-conviction relief, he stands in the position of one appealing from a negative judgment, and on appeal we will consider only the evidence and reasonable inferences from the evidence that supports the judgment. *Id.* To prevail upon appeal, a petitioner for post-conviction relief must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

[31]    Rondeau advances numerous bases upon which he contends his trial counsel was ineffective. We address these in turn.

[32]    *Preparation for Trial.* A number of Rondeau's contentions center on his claim that counsel was insufficiently prepared for trial, and as a result was ineffective. Rondeau argues that counsel was inexperienced and had too large a caseload to properly defend the case, did not sufficiently communicate with Rondeau before trial, did not interview all of the State's witnesses before trial, did not interview or seek testimony from several of Rondeau's acquaintances concerning Stegbauer's character, did not hire forensic experts, and did not adequately investigate why the State only tested some objects for blood.

[33]    The evidence presented at the post-conviction hearing established that Rondeau's trial counsel had up to thirty five active cases at the time of Rondeau's trial. No evidence was presented, however, that this caseload was unreasonably large or that it prevented counsel from preparing for trial. Nor did Rondeau adduce any evidence that his trial counsel, who had tried a number of cases to juries before representing Rondeau, was so inexperienced as to be ineffective—and inexperience is not in itself a necessary basis for post-conviction relief. *See Timberlake*, 753 N.E.2d at 603. Finally, as to communication with counsel, Rondeau did not adduce evidence that counsel's failure to conduct a full mock trial or more frequently communicate with Rondeau before trial prejudiced him in any way. Rondeau failed to introduce evidence on all these points, and the post-conviction court did not err when it concluded that he failed to carry his burden of proof.

[34] With respect to interviewing all of the State's witnesses before trial, Rondeau does not indicate in his brief how counsel's failure to do so might have prejudiced Rondeau's case, and Rondeau did not adduce any evidence in that regard.

[35] Rondeau presented evidence concerning trial counsel's decision not to interview potential witnesses with respect to Stegbauer's character. The core of Rondeau's theory at trial was a self-defense claim. While evidence of a person's character is generally inadmissible to prove action in conformity therewith on a particular occasion, *see* Ind. Evidence Rule 404(a), "witnesses other than the defendant should be allowed to provide testimony to corroborate the specific prior acts by the victim that a defendant uses to support a claim of self-defense on the grounds of reasonable fear." *Littler v. State*, 871 N.E.2d 276, 278 (Ind. 2007) (citing *Brand v. State*, 766 N.E.2d 772, 782 (Ind. Ct. App. 2002), *trans. denied*). At the post-conviction hearing, Rondeau showed that at least one of the four individuals he identified would have been willing to testify at trial if requested. Rondeau did not, however, establish how counsel's decision not to adduce that witness's testimony might have prejudiced the case such that there was a reasonable likelihood of a different result at trial had counsel interviewed the four individuals Rondeau identified.

[36] Rondeau further argues that counsel was ineffective for failing to obtain expert testimony to challenge one of the State's expert witnesses, Doctor Joye Carter ("Doctor Carter"), on the question of the defensive nature of Stegbauer's wounds. Trial counsel testified at the post-conviction hearing that it appeared

during pretrial discovery that Doctor Carter's testimony would have been favorable toward Rondeau's theory of the case, but that her opinion was determined to be different shortly before trial. Upon learning of this, trial counsel timely moved for a continuance of the trial, but that motion was denied. Moreover, trial counsel twice sought mistrials with respect to testimony from this witness, and sought to exclude Doctor Carter's testimony on multiple occasions. All of these motions were denied, the denial of those requested remedies was one of the subjects of Rondeau's appeal, and this Court found no reversible error. Trial counsel made a strategic decision of the sort that we do not second guess, *see Moore*, 678 N.E.2d at 1261, and timely sought to obtain a remedy that the trial court ultimately denied. We cannot conclude that the post-conviction court erred when it did not find counsel ineffective on this ground.

[37] Finally, Rondeau argues that trial counsel was ineffective in failing to seek testing of numerous objects from the crime scene for Rondeau's blood. During the post-conviction hearing, Rondeau examined co-counsel at trial and sought to elicit testimony that, had additional items been tested, Rondeau's blood would have been found on those items and that this would have lent support to the self-defense claim. As trial counsel and co-counsel both observed, evidence was introduced at trial that Rondeau had been injured, bolstering Rondeau's theory of the case. Further, our review of the record from the trial disclosed that trial counsel cross-examined witnesses concerning what items were and were not tested for DNA, and elicited from one witness an acknowledgment

that the tests run could not determine that an individual's DNA was not on an item—only that an individual's DNA was not in the sample tested. (Trial Tr. at 468-69.) And to the extent that Rondeau contends that trial counsel was ineffective in failing to inquire further into inconsistencies between probable cause affidavits and witness testimony concerning the location of blood at the crime scene, he has failed to establish how his trial theory of self-defense was prejudiced.

[38] *Objections at Trial.* Rondeau also argues that trial counsel was ineffective because of failure to object to testimony at trial that Rondeau characterizes as perjury. Beyond the bald assertion on Rondeau's part that Detective Patterson's testimony concerning the number of injuries Rondeau had—one, or two—was perjured, his argument centers upon whether his injuries were "documented" by police. (Appellant's Br. at 31.) The form of documentation Rondeau claims as the basis for Detective Patterson's purportedly perjured testimony was Rondeau's interview with police, the recording and transcript of which were both admitted into evidence at trial. Trial counsel had the opportunity to conduct cross-examinations of the State's witnesses on these points, and did so. Moreover, Rondeau has failed to establish how the specific testimony at issue—whether he had one injury or two—would have established any greater likelihood of his success at trial on his self-defense claim, given the ten sword wounds identified on Stegbauer's body. Rondeau thus failed to carry his burden on the question of trial counsel's objections at the post-conviction hearing.

[39] *Jury Instruction.* Rondeau also contends that trial counsel was ineffective by failing to tender proposed jury instructions on 1) voluntary manslaughter, and 2) defense of a third person. The theory of Rondeau's defense at trial was one of self-defense, a strategy he agreed to with his attorneys. At the post-conviction hearing, Rondeau asked trial counsel why he "failed to tender lesser offense instructions." (P-CR Tr. at 28.) Counsel testified that "after consultation with yourself [Rondeau] it was not the path we wanted to go," and that it "was a joint decision between co-counsel, myself and yourself." (P-CR Tr. at 28.) Rondeau now argues that the decision not to seek an instruction on sudden heat amounted to ineffectiveness.

[40] We cannot say that trial counsel's decision not to seek an instruction on voluntary manslaughter warranted post-conviction relief. The evidence before the post-conviction court was that this decision was strategic: counsel, together with Rondeau, decided on self-defense theory, and an "all or nothing" trial strategy is not in itself unreasonable. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998); *see Sarwacinski v. State*, 564 N.E.2d 950, 951 (Ind. Ct. App. 1991) (finding no ineffectiveness where counsel pursued a self-defense strategy and did not tender an instruction on voluntary manslaughter). We decline Rondeau's request to second-guess trial counsel's strategy.

[41] With respect to Rondeau's claim that counsel was ineffective for failure to tender an instruction of defense of a third party, the State observes that the likelihood of the success of such an approach was low in light of the fact that Rondeau had himself been charged with reckless homicide with respect to the

third party, his grandmother. Moreover, the elements of defense of a third party are the same as those of self-defense. *See* I.C. § 35-41-3-2(c) (establishing as an affirmative defense the use by a person of "reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force"); *Whipple v. State*, 523 N.E.2d 1363, 1367 (Ind. 1988) (treating defense of self and defense of others together for purposes of reviewing trial counsel's refusal to tender proposed jury instructions). Rondeau's self-defense claim was unsuccessful, and he has failed to establish that a different outcome was reasonably likely if a jury instruction had been given on defense of a third party.

[42] *Speedy trial.* Finally, we turn to Rondeau's claim that trial counsel should have filed Rondeau's requested motion for a speedy trial, and that counsel was ineffective in failing to do so. During the pendency of his trial proceedings, Rondeau pro se submitted a request for a speedy trial; the trial court did not entertain the motion because Rondeau was at that time represented by counsel. *See Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000) (holding that "once counsel was appointed, Defendant spoke to the court through counsel," and thus the court "was not required to respond to defendant's request" for a speedy trial). Rondeau then requested that his trial counsel file a motion for speedy trial; trial counsel did not request a speedy trial.

[43] The post-conviction court concluded that Rondeau's claim in this respect was a freestanding claim of error available for review upon direct appeal. We agree

with Rondeau that his argument was couched as an ineffectiveness of counsel question, however, and address it in that light.

[44] Rondeau's claim on the speedy trial question boils down to whether a request for a speedy trial was part of his "ultimate authority to make certain fundamental decisions regarding his … case," akin to decisions concerning whether to plead guilty, waive a jury trial, testify, or take an appeal. (Appellant's Br. at 19.) Rondeau cites no authority for this proposition, instead arguing baldly that "[t]he accused has a fundamental right to have a speedy trial if he or she wants." (Appellant's Br. at 19.) Yet the Indiana Supreme Court has observed that it is not per-se ineffectiveness for an attorney not to file a motion for discharge under Criminal Rule 4(B), even after filing a speedy trial motion. *Roseborough v. State*, 625 N.E.2d 1223, 1225 (Ind. 1993); *Townsend v. State*, 673 N.E.2d 503, 506-07 (Ind. Ct. App. 1996). Further, Rondeau has failed to argue, let alone demonstrate that he was prejudiced by counsel's strategic decision not to file a motion seeking an early trial.

[45] We accordingly conclude that the post-conviction court did not clearly err when it concluded that Rondeau did not receive ineffective assistance of trial counsel.

## Ineffective Assistance of Appellate Counsel

[46] We turn now to Rondeau's final issue on appeal, whether his appellate counsel was ineffective. A defendant is entitled to the effective assistance of appellate counsel. *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002). The two-pronged standard for evaluating the assistance of trial counsel first enunciated in

*Strickland* is applicable to appellate counsel ineffective assistance claims. *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997). There are three basic categories of alleged appellate ineffectiveness: (1) denying access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Id.* at 193-95. Here, the second category is implicated.

[47] "To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008). Upon review, the performance prong is evaluated by applying the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than those raised. *Id.*

[48] Rondeau contends that his appellate counsel was ineffective because he did not argue that trial counsel was ineffective for failure to proffer jury instructions on manslaughter and defense of a third party. Here, the question of whether trial counsel was ineffective for failing to request certain jury instructions was not clearly stronger than those raised by appellate counsel. On direct appeal, three issues were raised: whether the trial court abused its discretion when it denied trial counsel's motion for a continuance; whether the trial court abused its discretion when it admitted into evidence Rondeau's purportedly coerced statement to police; and whether there was sufficient evidence to sustain Rondeau's conviction in light of his claim of self-defense. None of these were successful, and a claim of ineffectiveness of trial counsel was not clearly better

than these; indeed, we have above affirmed the post-conviction court's judgment that counsel was not ineffective.

[49] We accordingly find no error in the post-conviction court's conclusion that Rondeau's appellate counsel was not ineffective.

# Conclusion

[50] Rondeau has failed to establish bias on the part of the post-conviction court. The post-conviction court did not abuse its discretion with respect to various aspects of post-conviction proceedings. The post-conviction court did not err when it concluded that Rondeau did not receive ineffective assistance of trial counsel and appellate counsel.

[51] Affirmed.

Vaidik, C.J., and Crone, J., concur.