# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 17 2020, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Public Defender of Indiana

John Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alexa R. Hamilton,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | September 17, 2020<br><br>Court of Appeals Case No.<br>20A-PC-641<br><br>Appeal from the<br>Elkhart Circuit Court<br><br>The Honorable<br>Michael A. Christofeno, Judge<br><br>Trial Court Cause No.<br>20C01-1812-PC-70 |

**Kirsch, Judge.**

[1] Alexa R. Hamilton ("Hamilton") appeals the denial of her petition for post-conviction relief. Hamilton raises one issue, which we restate as whether she received effective assistance of counsel at her sentencing hearing.

[2] We affirm.

## Facts and Procedural History

[3] On February 27, 2018, Hamilton was arrested and later charged with dealing in methamphetamine. *Conf. PCR Ex. 2*; *Tr. Vol. II* at 46. At the time of her arrest, Hamilton possessed ninety-five grams of methamphetamine and was out on bond in three other cases, two of which were also methamphetamine possession cases and the third involved two counts of operating while intoxicated. *Tr. Vol. II* at 44-46; *Conf. PCR Ex. 5* at 56-57. On March 18, 2018, the State charged Hamilton with dealing in methamphetamine as a Level 2 felony. *Conf. PCR Ex. 2*. On June 14, 2018, Hamilton pleaded guilty to the charge of dealing in methamphetamine as a Level 2 felony and to operating while intoxicated as Level 6 felony pursuant to a written plea agreement, which imposed a sentencing cap of twenty years executed, and had two of her other felony methamphetamine possession cases dismissed. *Conf. PCR Ex. 3*. At the guilty plea hearing, Hamilton admitted that on February 27, 2018, she had at least ten

grams of methamphetamine, that she knew it was methamphetamine, and that she planned to distribute it. *PCR Ex. 1* at 19.[1]

[4] A presentence investigation report ("the PSI") was prepared. *PCR Conf. Ex. 5.* The PSI detailed Hamilton's criminal history as both an adult and a juvenile. *Id.* at 55-57. As a juvenile, Hamilton had five juvenile referrals. *Id.* at 55-56. In 2009, Hamilton had a juvenile referral for possession of marijuana that did not result in an adjudication and for which she "completed AVIP and [a] Drug Education Program." *Id.* at 55. In 2011, Hamilton had a juvenile referral for burglary, which resulted in an adjudication, and she was placed at Bashor Children's Home for drug treatment. *Id.* Also, in 2011, Hamilton had juvenile referrals for possession of marijuana, possession of paraphernalia, and illegal possession of an alcoholic beverage, none of which resulted in an adjudication, and she was again placed at Bashor Children's Home. *Id.* at 56. In addition to the three other cases for which she was out on bond, as an adult, Hamilton had been convicted of possession of a controlled substance as a Class A misdemeanor, operating while intoxicated as a Class A misdemeanor, and possession of marijuana as a Class B misdemeanor. *Id.* She was placed on probation for those misdemeanor convictions and successfully completed her probation in 2017. *Id.* In the PSI, Hamilton also reported that she was drug free from approximately 2012 through 2017 but that she relapsed following the

---

[1] *PCR Ex. 1* is the transcript of Hamilton's guilty plea hearing and her sentencing hearing.

death of Justin Dean ("Dean"), her oldest child's father, in February 2017. *Id.* at 60.

[5] On July 12, 2018, the trial court held a sentencing hearing. *Appellant's App. Vol. II* at 8. Hamilton's trial counsel made argument but did not call any witnesses or present evidence at the sentencing hearing. *PCR Ex. 1* at 29. Instead, her trial counsel argued that Hamilton's criminal history reflected her struggles with drug addiction, but that despite her struggles Hamilton's history also showed that she could be drug free for an extended period. *Id.* at 29-30. Hamilton's trial counsel further argued the charge leading to Hamilton's plea was related to the death of Dean and despite her attendance at a six-week grief course on the recommendation of her probation officer, she failed to address her grief issues. *Id.* at 31. Finally, her trial counsel argued that Hamilton had "good potential" and that she had begun classes at Ross Medical College. *Id.* at 32.

[6] Hamilton then made a statement at sentencing in which she apologized to her family, the community, the families of people that she sold drugs to, and expressed her desire to receive help. *Id.* at 34. As a supplement to trial counsel's argument, the trial court also had before it a letter from Hamilton's mother, Teri Hamilton ("Teri"). *Appellant's App. Vol. II* at 88-89. In the letter, Teri described Hamilton as "very intelligent & kind-hearted" and that Hamilton was "fairly typical" until her sophomore year of high school when she became associated with methamphetamine. *Id.* at 88. Teri also informed the trial court that Hamilton returned to using methamphetamine after Hamilton was unable to cope with the death of Dean. *Id.* Teri asked for the trial court to consider

giving Hamilton a "lighter sentence" and to "give her a chance to prove . . . that she can change." *Id.* at 89.

[7] In sentencing Hamilton, the trial court noted that Hamilton seemed "to be a bright and engaging young lady." *PCR Ex. 1 at 34.* The trial court stated the mitigating circumstances were Hamilton's acceptance of responsibility and her accompanying statement, trial counsel's statements on her behalf, her issues with addiction, and her young age, twenty-three, at the time of sentencing. *Id.* at 32, 35. The trial court found that Hamilton's prior criminal history was an aggravator as it included her juvenile referrals, three misdemeanor convictions, three crimes committed while out on bond, and two felony cases that were dismissed as part of the plea agreement. *Id.* at 36. It also identified as aggravators Hamilton's history of abusing drugs and alcohol and that other forms of sanctions had proven to be unsuccessful. *Id.* at 36-37. The trial court concluded that "the aggravators taken alone, or as a whole, outweigh any mitigating circumstance." *Id.* at 37. The trial court sentenced Hamilton to twenty-five years with six years suspended to probation for the Level 2 felony dealing in methamphetamine and a consecutive sentence of 365 days for the Level 6 felony of operating while intoxicated. *Id.* at 37-39; *PCR Ex. 6 at 62-66.*

[8] On December 13, 2018, Hamilton filed a petition for post-conviction relief.[2] *Appellant's App. Vol. II* at 13, 18-27. On May 21, 2019, Hamilton filed an

---

[2] In her plea agreement, Hamilton waived her right to appeal her sentence. *Conf. PCR Ex. 3* at 48, *PCR Ex. 1* at 27.

amendment to her petition for post-conviction relief ("amended petition"), alleging that she received ineffective assistance of counsel at sentencing because her trial counsel failed to call witnesses and failed to object to the trial court using juvenile referrals that did not result in adjudications in aggravation. *Id.* at 15, 35-37

On November 13, 2019, the post-conviction court held a hearing on Hamilton's amended petition. *Id.* at 16. At the hearing, Hamilton's trial counsel testified that he had been an attorney since 1994 and had started working as a public defender in 1998. *Tr. Vol. II* at 8. Trial counsel represented Hamilton in each of the cases against her, including the underlying charge. *Id.* at 9. He testified that if Hamilton had "somebody that would have wanted to testify on her behalf, I'd certainly discuss that with the client[,]" and that if a witness was not called to the stand it would be an indication that the client did not identify or request the witness. *Id.* at 11, 16. Trial counsel added that he "would call somebody if [the client was] adamant about that person coming in to testify on their behalf. Either that, or get a letter from them . . . on the other person's behalf." *Id.* at 16.

Rebecca Hamilton ("Rebecca"), Hamilton's grandmother, testified that she would have testified at Hamilton's sentencing hearing but that she was not contacted by Hamilton's trial counsel and did not try to contact him. *Id.* at 19, 21-22. Rebecca told the post-conviction court that Hamilton was caring for her two children before her arrest, and that Hamilton started "spiraling down" after Dean died. *Id.* at 20. Teri also testified, stating that she tried to contact

Hamilton's trial counsel one time and did not speak with trial counsel at Hamilton's sentencing but that she was sure she told Hamilton she would testify if needed. *Id.* at 27. Teri added that Hamilton's life "just kind of fell apart" after Dean's death and that if she had testified at sentencing she would have asked for leniency for Hamilton. *Id.* at 25. Amy Dean ("Amy"), Dean's stepmother, testified that she did not speak with Hamilton's trial counsel or otherwise attempt to contact him. *Id.* at 29-30. Amy also added that Hamilton "started having issues" after Dean's death and that "[e]verything just kind of went downhill from there." *Id.* at 30. Teri and Amy were both present at Hamilton's sentencing hearing and both indicated they were willing to testify. *Id.* at 26, 31. Rebecca was sick and was not present at Hamilton's sentencing but also indicated she was willing to testify for Hamilton. *Id.* at 21, 37.

[11] Hamilton testified that she did not discuss any potential witnesses for sentencing with her trial counsel because she did not know it was an option, claiming that she did not know she could testify on her own behalf and that she did not talk to her trial counsel about testifying. *Id.* at 36. Hamilton said that, after she finished treatment at Bashor Children's Home, she was drug free for four years and had two children in that time period, K.H., by Dean, and A.P., by Matt Pelikan ("Pelikan"). *Id.* at 37. She testified that she worked at 7-Eleven, Qdoba, Applebee's, and Lippert to support herself and her children. *Id.* at 38. Hamilton stated that she did not receive any child support from Dean until she took him to court and that she received no child support from Pelikan. *Id.* She testified that when Dean died in an accident, her probation officer put

her into grief classes which were not effective, and she instead began to use methamphetamine again. *Id.* at 39. Hamilton also testified that she started dealing to support her methamphetamine habit. *Id.* At the time of her arrest, Hamilton had around ninety-five grams of methamphetamine in her possession and had been dealing it for several months, indicating that she would sometimes sell up to one half pound of methamphetamine every other day. *Id.* at 46.

[12] On February 25, 2020, the post-conviction court denied Hamilton's amended petition in a written order containing findings of fact and conclusions of law. *Appellant's App. Vol. II* at 53-63. The post-conviction court's order noted that the information that was before the sentencing court was sufficient for that court to conclude Hamilton was a "bright and engaging young lady." *Id.* at 60. It found that even if Hamilton's witnesses had testified at sentencing, her sentence would have been the same because the court "was sufficiently apprised at sentencing of many positive aspects" of her character. *Id.* at 61. It concluded that Hamilton's trial counsel was not deficient in not calling witnesses because none of Hamilton's witnesses attempted to contact counsel to express a desire to testify and that Hamilton did not mention that she wanted witnesses to testify. *Id.* at 62. As to the references at sentencing to Hamilton's juvenile referrals not resulting in adjudications, the post-conviction court found that their purpose was to demonstrate that prior contacts with the juvenile justice system did not dissuade Hamilton from engaging in criminal activity and were not independent aggravating factors. *Id.* at 62. It concluded that even without

the juvenile referrals the aggravating factors outweighed the mitigating factors, that even if Hamilton's trial counsel had objected such an objection would not have resulted in a reduced sentence, and that Hamilton had not demonstrated prejudice. *Id.* at 63. Hamilton now appeals.

## Discussion and Decision

[13] Hamilton contends that her trial counsel was ineffective. The petitioner in a post-conviction proceeding bears the burden to establish grounds for relief by a preponderance of the evidence. *Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017). When appealing the denial of a petition for post-conviction relief, the petitioner is appealing a negative judgment. *Campbell v. State*, 19 N.E.3d 271, 274 (Ind. 2014). Thus, she must show that the evidence leads unerringly and unmistakably to a conclusion opposite to the post-conviction court's conclusion. *Humphrey*, 73 N.E.3d at 681. Although we do not defer to the post-conviction court's legal conclusions, its findings and judgment will be reversed only upon a showing of clear error which leaves us with the definite and firm conviction that the trial court erred. *Id.* at 682.

[14] "The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel and mandates that the right to counsel is the right to the effective assistance of counsel." *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019). "We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*." *Rondeau v. State*, 48 N.E.3d 907, 916 (Ind. Ct. App. 2016) (citing *Strickland v. Washington*, 466 U.S.

668, 698 (1984)), *trans. denied*. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation fell short of prevailing professional norms, and (2) counsel's deficient performance prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 698. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Rondeau*, 48 N.E.3d at 916 (quoting *Strickland*, 466 U.S. at 698). "The two prongs of the *Strickland* test are separate and independent inquiries." *Id.* (citing *Strickland*, 466 U.S. at 697). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697).

[15] Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998)), *trans. denied*. Isolated omissions or errors, poor strategy, or bad tactics do not necessarily render representation ineffective. *McCullough*, 973 N.E.2d at 74.

[16] Hamilton argues that her trial counsel was ineffective for failing to call witnesses and present additional mitigation evidence at her sentencing hearing. We disagree. A decision to call witnesses is a matter of trial strategy which an appellate court will not second-guess. *Smith v. State*, 822 N.E.2d 193, 204 (Ind. Ct. App. 2005), *trans. denied.* Here, there was no evidence that Rebecca or Amy contacted Hamilton's trial counsel to testify at Hamilton's sentencing hearing. *Tr. Vol. II* at 21-22, 30-31. Teri stated that she spoke with Hamilton's trial counsel one time, but there is no indication that she asked to testify at sentencing. *Id.* at 27. Hamilton herself did not alert her trial counsel that she had any witnesses who would be willing to testify. *Id.* at 36. Hamilton's trial counsel had been in practice as a public defender for approximately twenty years. *Id.* at 8. Trial counsel testified that it was his practice to contact witnesses if a client provided names to him and that Hamilton's failure to provide him with names indicated that she did not have any proposed witnesses. *Id.* at 11-12, 16. Moreover, the trial court had before it Hamilton's PSI, which detailed Hamilton's work history and personal life, including her two young children, one of whom had tested positive for methamphetamine, her plan to work toward a degree at Ross Medical College, her struggles with drug addiction, and her criminal history. *Conf. PCR Ex. 5* at 52-61. It also had a letter from Hamilton's mother explaining that the death of Dean precipitated Hamilton's slide back to criminal activity and relapse into methamphetamine use, and that her daughter was intelligent and kind-hearted and capable of maintaining sobriety. *Appellant's App. Vol. II* at 88-89. It also heard Hamilton's statement in which she accepted responsibility for her conduct and expressed

her regret and apology for her actions. *PCR Ex. 1* at 34. We cannot say that Hamilton's trial counsel performed deficiently by not calling witness that were not brought to his attention.

[17] Hamilton contends she was prejudiced by her trial counsel's failure to call witnesses because the trial court was unable to hear live witness testimony explaining the details of her life. To assess whether a petitioner suffered prejudice, the inquiry is whether there was a reasonable probability that the trial court would have imposed a lesser sentence had the mitigating evidence been before it. *Lewis v. State*, 116 N.E.3d 1144, 1157 (Ind. Ct. App. 2018), *trans. denied*.

[18] Here, the post-conviction judge was the same judge that sentenced Hamilton. This court has stated that "a post-conviction court's findings and judgment should be entitled to 'greater than usual deference' when the post-conviction judge is the same judge who conducted the original trial." *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *trans. denied.* The post-conviction judge concluded that after hearing the testimony of Teri, Rebecca, and Amy at the post-conviction hearing that their respective testimony would not have produced a reduced sentence. *Appellant's App. Vol. II* at 60-62. The information that Hamilton's proposed witnesses would have provided to the trial court was already before the trial court, including any factors in mitigation. Thus, we cannot say that there was a reasonable probability that a lesser sentence would have been imposed on Hamilton had witnesses been called or additional evidence been presented. *See, e.g.*, *Alvarado v. State*, 686 N.E.2d 819, 822-23

(Ind. 1997) (holding that petitioner failed to show he was prejudiced by his counsel's failure to present witnesses at petitioner's sentencing hearing because petitioner failed to show how the witnesses testimony would have changed the sentencing outcome); *Johnson v. State*, 832 N.E.2d 985, 1005 (Ind. Ct. App. 2005) (holding that petitioner failed to demonstrate that he received ineffective assistance of counsel because he did not provide any evidence as to how the result of his sentencing hearing would have been different if his counsel would have argued more or different mitigating circumstances), *trans. denied*.

[19] Hamilton also argues that her trial counsel's performance was deficient because he did not object when the sentencing court cited Hamilton's juvenile referrals in finding that her criminal history was an aggravating circumstance. To prevail on a claim of ineffective assistance based on the failure to object, Hamilton must establish that an objection would have been sustained and that she was prejudiced by the failure. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010).

[20] Hamilton maintains that the trial court erroneously relied on her juvenile referrals in finding her criminal history as an aggravator and cites *Day v. State*, 560 N.E.2d 641 (Ind. 1990) and *Morell v. State*, 118 N.E.3d 793 (Ind. Ct. App. 2019), *clarified on reh'g*, 121 N.E.3d 577 (Ind. Ct. App. 2019), *trans. denied*, in support.

[21] In *Day*, the Indiana Supreme Court stated that, concerning juvenile proceedings, "t]he details of criminal activity may be used to demonstrate a

history of criminal activity when a juvenile court *has* determined that those acts were committed" and that when a juvenile proceeding ends without a disposition "the mere fact that a petition was filed alleging delinquency does not suffice as proof of a criminal history." 560 N.E.2d at 643 (emphasis in original) (footnote omitted). The Court explained that "[a]n adjudication of delinquency is not a fact that can be used by a sentencing court to enhance a criminal sentence." *Id.* (citation omitted). However, it noted that a juvenile adjudication serves to establish a history criminal behavior as juvenile, which "indicates that the history is correct" and "elevates that history from allegation to fact." *Id.* (citation omitted). After determining that the trial court's use of Day's juvenile referrals was erroneous in imposing his sentence, the Court noted that if there are sufficient aggravating circumstances to show that the trial court "would have entered the same sentence even absent the impermissible factor it should affirm the trial court's decision" but could not say with confidence that Day would have been sentenced as he was without the trial court's reliance on his juvenile record. *Id.*

[22] In *Morell*, a panel of this court affirmed the trial court's use of Morell's juvenile history as an aggravating circumstance, explaining that some of the juvenile history cited in Morell's presentence investigation report did not indicate either a disposition or an adjudication, but that the trial court properly considered the portion of his juvenile history resulting in adjudications and his supporting admissions to facts about his drug use as a juvenile. 118 N.E.3d. at 798-99. On rehearing, the panel affirmed its decision and, citing *Day*, explained that the

trial court's criminal history aggravator should not have included any juvenile contacts with the justice system not resulting in an adjudication. *Morell v. State*, 121 N.E.3d 577, 579 (Ind Ct. App. 2019), *trans. denied*. It declined to remand for resentencing because it was confident the trial court would not reach a different sentence, explaining:

> To the extent the trial court here may have considered any of Morrell's juvenile contacts with the justice system not reduced to an adjudication as part of the criminal history aggravator of his sentence, which the court appears to have done based upon the oral sentencing statement, the trial court abused its discretion. However, the factors used to support the aggravating circumstance of Morrell's criminal history other than the nonadjudicated charges amply support the sentence imposed. Morrell had amassed juvenile adjudications, adult convictions, and admitted to the use of illicitly or illegally obtained illicit substances beginning at the age of fourteen.

*Id.*

[23] Here, as to Hamilton's criminal history and without objection by her trial counsel, the trial court stated:

> Prior criminal history. Five juvenile referrals. Count 'em: Five juvenile referrals, none of which seemed to dissuade you from criminal activity. Three misdemeanor convictions. You committed three crimes while you were on bond. That, certainly, is an aggravating factor. Two of the felony cases against you are being dismissed pursuant to the plea; the Court can consider that to be an aggravating factor.

*PCR Ex. 1* at 36. In sentencing Hamilton, the trial court also explained that previous alternative sanctions such as education programs and drug and alcohol treatment, had not dissuaded Hamilton from engaging in criminal activity. *Id.* at 37. The post-conviction court's order found that the reference to the juvenile referrals was to demonstrate that prior contacts with the justice system as a juvenile did not dissuade Hamilton from engaging in criminal activity and were not independent aggravating factors. *Appellant's App. Vol. II* at 62. We cannot say that *Day* or *Morell* prohibited the trial court from using the juvenile referrals for such purposes. Hamilton's trial counsel's failure to object was not deficient performance.

[24] Hamilton is also not able to show that she was prejudiced. The post-conviction court's order concluded that even if Hamilton's trial counsel had objected to the reference to the juvenile referrals at sentencing, such an objection "would not have resulted in a different sentence." *Id.* at 63. Thus, even if an objection had been made and was sustained on the basis set forth in *Day* and *Morell*, the record showed that the trial court would have entered the same sentence absent the use of the juvenile referrals. Hamilton's adult criminal history consisted of three misdemeanor convictions, three offenses committed while she was out on bond, and that she had two felony offenses dismissed as part of the plea agreement. *PCR Conf. Ex. 5* at 56-57; *PCR Ex. 6* at 62. Setting aside the remaining unadjudicated juvenile referrals, Hamilton had accumulated one juvenile adjudication for burglary. *PCR Conf Ex. 5.* at 55-56. In addition to criminal history, the trial court's sentencing decision was supported by other

aggravating factors that were properly identified, including Hamilton's history of illegal alcohol and drug use that began in her adolescence and that alternative sanctions such as drug treatment, therapy, and suspended sentences had not worked for Hamilton. *PCR Ex. 6* at 62-63. The trial court also specifically concluded that the aggravating circumstances outweighed the mitigating circumstances. *Id.* at 63; *PCR Ex. 1* at 37. "A trial court may rely upon only one aggravating circumstance to support an enhanced sentence." *Veal v. State*, 784 N.E.2d 490, 494 (Ind. 2003). Thus, Hamilton is unable to show prejudice.

[25] Affirmed.

Pyle, J., and Tavitas, J., concur.