# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**BRENT WESTERFELD**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHEN R. CREASON**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 03 2012, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM MINNICK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 47A05-1108-CR-448 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable Andrea K. McCord, Judge
Cause No. 47C01-8507-CF-39

**April 3, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant William Minnick appeals from the sentence imposed following his convictions for Murder,[1] a felony, Class A felony Robbery,[2] and Class A felony Rape.[3] Minnick contends that the trial court erred in imposing sentences for his robbery and rape convictions, that his convictions for Class A felony robbery and murder violate prohibitions against double jeopardy, and that the trial court abused its discretion in refusing to order an additional competency evaluation before sentencing him. We affirm in part and reverse and remand in part with instructions.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Minnick's convictions were related by the Indiana Supreme Court in *Minnick v. State*, 544 N.E.2d 471 (Ind. 1989):

> On the afternoon of October 26, 1981, James D. Payne returned from work to his home in Greencastle, Indiana. He discovered his wife's body on the bedroom floor. He immediately called police. The ensuing investigation revealed Martha Payne had been raped, anally sodomized, stabbed in the right rear shoulder, and struck on the head with a table lamp. In addition, ligature marks on her neck indicated she had been strangled, and burn marks on her ankles showed the perpetrator had attempted to electrocute her as well. The cause of death was determined to be the knife wound in her upper back, which penetrated her lung and severed her pulmonary artery.
>
> That night Sergeant Rodney Cline became aware that a "Dukes of Hazzard"-type car had been observed parked in a college fraternity's lot near the victim's home around the time of her death. Cline confirmed the driver's description matched that of appellant, who had spoken to Cline outside the victim's house that afternoon to apologize for a dispute the two had engaged in a week earlier concerning the involuntary towing of appellant's distinctive orange Dodge Charger.
>
> Appellant was subsequently arrested and search warrants were obtained for his car and for specimens of his blood and hair for comparison

---

[1] Ind. Code § 35-42-1-1 (1981).
[2] Ind. Code § 35-42-5-1 (1981).
[3] Ind. Code § 35-42-4-1 (1981).

2

with samples taken at the crime scene. A strand of hair found adhering to a length of electrical wire in appellant's car was determined to be of common origin with hair samples taken from the victim. Laboratory tests revealed the victim's blood was type B and matched blood specimens found on a broken table lamp and kitchen knife found at the crime scene. Semen specimens recovered from the carpet underneath the victim turned out to be from two separate donors: one a type O secretor, *i.e.*, one who secretes the antigens used in typing blood in other body fluids, and the other a non-secretor of unknown type. The victim's husband and appellant were each determined to have type O blood—the husband a secretor, appellant a non-secretor. Thus appellant was neither positively identified nor definitively ruled out as a donor of the semen found under the victim's body.

Appellant's alibi witnesses testified as to his whereabouts at various times the afternoon of the murder. Due to technical oversights following discovery of the victim's body, however, authorities were unable to pin down her time of death with any precision. Appellant admitted to Sergeant Cline that he had been in the victim's home that afternoon to see about doing some remodeling work for the Paynes. In addition, two witnesses testified at trial that appellant had made inculpatory admissions relating certain details of the murder while incarcerated.

*Id.* at 473-74. On October 29, 1981, the State charged Minnick with murder, Class A felony robbery, Class A felony rape, and criminal deviate conduct. On September 18, 1985, a jury found Minnick guilty of murder, robbery, and rape. On October 16, 1985, the trial court sentenced Minnick to death for his murder but did not impose separate sentences for robbery or rape. During sentencing, the trial court did not mention a reason for not imposing sentences for Minnick's robbery or rape convictions and Minnick did not object to his not being sentenced for them.

On December 1, 2004, the post-conviction court set aside Minnick's death sentence and ordered resentencing and also determined that he was incompetent, having been previously found to be so by the United States District Court. On March 7, 2011,

3

the Indiana Department of Mental Health sent certification to the trial court that Minnick was competent.

On August 23, 2011, the trial court held a new sentencing hearing. At the beginning of the hearing, the following exchange took place:

> [Minnick's Counsel]: Very reluctantly I would ask the Court to have Mr. Minnick examined for competency. Mr. Minnick, as the Court is aware, has a very very long history of suffering from paranoid schizophrenia. He was diagnosed with that in his post conviction proceedings several years ago. He was determined to be incompetent in Federal Court and a Guardian was appointed for him. He had indeed been largely incompetent for the last ten (10) years. While I had (indiscernible) that Mr. Minnick had been restored to competency, upon speaking with him today it's very clear to me that he is not at this point competent, he is not at this point able to assist his counsel. Ms. Youngcourt is here at my request because she represented Mr. Minnick in post conviction. We both believe that a further competency determination is required at this point and I won't say much further about that other than I would refer the Court to a Pre-Sentence Investigation Report, which I think gave us some sense that this may have been coming. In that report it indicates that the probation officer requested a statement from Mr. Minnick and at that point he went into a soliloquy that lasted approximately three and a half (3 ½) hours. Regarding some of the same things the Court is aware of, the problems that we've had with Mr. Minnick's mental illness through the years, for those reasons I would ask that the Court admit him under the statute for a competency determination and that we delay these proceedings.
>
> COURT: [Prosecutor], do you have a response?
>
> [Prosecutor]: Yes. The State would object, Your Honor. The Department of Mental Health found him competent, I think, in early March. There's been no expert testimony about that since. We think that the thing to [do] today is go ahead and present evidence and see how this proceeds.
>
> COURT: I do trust defense counsel's evaluation of Mr. Minnick because they have worked with him over the years. How I would like to proceed however is that the Department of Mental Health has found Mr. Minnick recently to be competent to assist counsel and Mr. Minnick to help your attorney in today's hearing, I'd like to at least try to get through this hearing. If at some point you want to revisit this issue, re-raise it, let me know that he's not able to assist you or discuss with you what's happening in the courtroom, at any point in the hearing you may re-raise it. I think the Court will note your request for the record. I would like the State to go

4

ahead and proceed and we'll see how we go and how Mr. Minnick can aid you at this point. I do understand he has that history, the Court also understands you have requested the Court consider that as a mitigating factor and that will clearly come up later in the hearing we will just see how we go as the hearing proceeds and how Mr. Minnick is able to help you, we'll see how we do.

Tr. pp. 3-4.

Following the presentation of evidence, the trial court stated the following on the record:

COURT: I first want to note for the record regarding the original issue of competency that was raised by Defense, I've been observing Mr. Minnick during this proceeding. He's sat calmly, he has aided counsel, asked questions, I believe that his allocution statement was very clear and concise. He made points to the court that I believe were appropriate. I have no reason to believe he wasn't competent to aid Counsel in this hearing, so any concerns had or requests raised regarding that I am going to deny. I think that he was competent for this hearing and appropriately aided counsel in his defense. I want to make that statement for the record.

Tr. p. 64. The trial court sentenced Minnick to sixty years of incarceration for murder, fifty years for robbery, and fifty years for rape, all sentences to run consecutively. For purposes of imposing enhanced sentences, the trial court found, as aggravating circumstances, Minnick's criminal record, his escape from jail after his arrest, and that Payne was killed in her home. The trial court found Minnick's mental illness to be a mitigating circumstance. In justifying the imposition of consecutive sentences, the trial court also found it to be aggravating that the injury, loss, or damage suffered by Payne was greater than required to prove the crimes charged.

**DISCUSSION AND DECISION**

5

## I. Whether the Trial Court Erred in Imposing Sentences for Robbery and Rape

### A. Indiana Code Section 35-4.1-4-2

In 1981, Indiana Code section 35-4.1-4-2 (and now its successor statute, section 35-38-1-2) required that a trial court sentence within thirty days of the entry of conviction. Minnick was not sentenced for his robbery or rape convictions for over twenty-five years following his convictions. As the Indiana Supreme Court has held, however, "trial courts are excused from exact compliance with the thirty-day sentencing requirement where there is good cause for delay and that such cause may be presumed where the record is silent as to the reason for the delay and the defendant made no objection." *McElroy v. State*, 553 N.E.2d 835, 840 (Ind. 1990) (citing *Kindred v. State*, 524 N.E.2d 279, 302 (Ind. 1988)). Here, there was no objection and the trial court gave no reason for not sentencing Minnick for rape or robbery. Pursuant to *McElroy*, we will presume good cause, thereby excusing the trial court from adherence to the thirty-day requirement.

Even if we had concluded that the trial court committed error in this regard, it could only have been considered harmless. The rationale for the rule that a defendant is entitled to have his sentence pronounced with reasonable promptness, as stated by the Indiana Supreme Court, is that "[a]n American citizen is entitled to live without a Damocles sword dangling over his head." *Taylor v. State*, 233 Ind. 398, 402, 120 N.E.2d 165, 167 (1954). This rationale has no application here, though, because Minnick spent the entire delay period incarcerated, most of it under a sentence of death. This was not a case where Minnick was a free man unable to live his life, plan for the future, or

6

otherwise find repose due to the looming threat of incarceration. It is hard to imagine, and Minnick does not claim, that while sitting on death row he was ever troubled by the fact that he had never been sentenced for rape and robbery but someday might be.

## B. Right to Speedy Sentencing

Minnick also contends that his constitutional right to speedy sentencing was violated by the delay. The Sixth Amendment to the United States Constitution provides, *inter alia,* that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. CONST. amend. VI. As with the Seventh Circuit Court of Appeals, we shall assume, without deciding, that the Sixth Amendment right to speedy trial applies to sentencing. *See U.S. v. Rothrock*, 20 F.3d 709, 711 (7th Cir. 1994). Also like the Seventh Circuit, we will analyze the question using the considerations described in *Barker v. Wingo*, 470 U.S. 514 (1972):

> The right to a speedy trial is a vague concept, incapable of precise evaluation. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). In determining whether the right has been violated, we start by examining the length of delay; "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance…. [T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id*. at 530-31, 92 S.Ct. at 2192. (footnote omitted). Once a sufficient delay has been identified, the reason for the delay must be examined and the defendant's assertion of the right is considered. *Id*. at 531, 92 S.Ct. at 2192. Finally, we determine whether the defendant has been prejudiced. Prejudice is gauged by considering the interests the right is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that defense will be impaired." *Id*. at 532, 92 S.Ct. at 2193 (footnote omitted).

*Rothrock*, 20 F.3d at 711-12.

Under the admittedly unusual circumstances of this case, we cannot conclude that even the twenty-five-year delay in sentencing violated Minnick's right to speedy sentencing. While the delay was quite lengthy, there is no indication in the record that it was the result of any objectionable actions by the State or trial court, and Minnick never asserted his right to be sentenced at the time or at any time before his death sentence was vacated and resentencing ordered in 2004.

Most importantly, however, there is no indication that Minnick was unfairly prejudiced by the delay. Minnick argues that what occurred here is equivalent to arbitrarily ordering a released defendant back to court for an additional sentence. We do not agree. As previously mentioned, Minnick has been incarcerated since 1981,[4] and therefore had no "Damocles sword" hanging over his head. Minnick also notes that, if his sentences for rape and robbery had been imposed in 1985 and ordered to run concurrently with his death sentence, they would have been discharged by now. While this may be true, there is absolutely no indication whatsoever in the record that the sentences would have been imposed in this fashion, and Minnick cites no authority that such a sentence would have been required. Minnick has failed to establish that his right to speedy sentencing has been violated.[5]

## II. Whether Minnick's Convictions for Murder and Class A Felony Robbery Violate Prohibitions Against Double Jeopardy

---

[4] Obviously, Minnick is entitled to credit for the time he has spent incarcerated in connection with this case.

[5] Minnick contends that sentencing him now for rape and robbery "represents a blatant violation of concepts of fundamental fairness." Appellant's Br. p. 21. In our view, it would violate concepts of fundamental fairness far more if Minnick were allowed to avoid punishment for rape and robbery as an unintended consequence of having his death sentence overturned.

8

Minnick contends, and the State concedes, that his convictions for murder and Class A felony robbery violate prohibitions against double jeopardy. Minnick's robbery conviction was a class A felony because it resulted in serious bodily injury. *See* Ind. Code § 35-42-5-1. However, "where a single act forms the basis of both a Class A felony robbery conviction and also the act element of the murder conviction, the two cannot stand." *Gross v. State*, 769 N.E.2d 1136, 1139 (Ind. 2002) (citing *Kingery v. State*, 659 N.E.2d 490, 495-96 (Ind. 1995)). The stab wound in Payne's back that caused her death was also the serious bodily injury alleged in the robbery count. As such, we remand with instructions to reduce Minnick's robbery conviction to a Class B felony robbery.

The State argues that we should order the imposition of a maximum sentence of twenty years for Minnick's robbery conviction and also that it be served consecutively to his other sentences, as opposed to remanding for resentencing. Under the circumstances of this case, we agree that such a disposition is warranted. Minnick does not contend that the trial court abused its discretion in imposing maximum sentences (for rape and robbery) or that the sentences be served consecutively, nor does he contend that his sentence was inappropriately harsh. Moreover, all of the aggravating circumstances that the trial court cited in imposing a maximum and consecutive sentence for the Class A robbery apply with equal force to a Class B robbery. Cases involving the affirmance of a sentence despite the use of erroneous aggravators lend support to our disposition. It is well-settled that "[w]here a trial court has used an erroneous aggravator, as occurred here, the court on appeal can nevertheless affirm the sentence if it can say with confidence that the same sentence is appropriate without it." *Witmer v. State*, 800 N.E.2d 571, 572-73

9

(Ind. 2003). In this case, we can say with confidence that a maximum and consecutive sentence for the robbery would be eminently appropriate, no matter what felony class, and so order that a twenty-year and consecutive sentence for robbery be imposed on remand.

### III. Whether the Trial Court Abused its Discretion in Denying Minnick's Request for a Competency Evaluation

Minnick contends that the trial court abused its discretion in denying his pre-hearing request for a new competency evaluation.

> We have previously determined that "the conviction of an incompetent defendant is a denial of federal due process and a denial of a state statutory right as well." *Faris v. State*, 901 N.E.2d 1123, 1125 (Ind. Ct. App. 2009). A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense. *Mast v. State*, 914 N.E.2d 851, 856 (Ind. Ct. App. 2009), *trans. denied*.
> ….
> However, the right to a competency hearing is not absolute. *Mast*, 914 N.E.2d at 856. Instead, such a hearing is required only when a trial court is confronted with evidence creating a reasonable or *bona fide* doubt as to a defendant's competency. *Id*. The decision regarding whether there is a reasonable doubt is within the trial court's discretion and depends upon the specific facts and circumstances of each case. *Id*. We will only reverse the trial court's decision if we find that the trial court has abused its discretion. *McManus v. State*, 814 N.E.2d 253, 259-61 (Ind. 2004). The trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Stuff v. Simmons*, 838 N.E.2d 1096, 1099 (Ind. Ct. App. 2005).

*Gibbs v. State*, 952 N.E.2d 214, 219 (Ind. Ct. App. 2011).

Minnick has failed to establish an abuse of discretion in this regard. The Logansport State Hospital reported to the trial court on March 7, 2011, that Minnick was again competent to assist in the preparation of his defense. Minnick was found capable

10

of working with counsel if he chose, disclosing pertinent facts, and testifying relevantly and was appropriately motivated. Nothing in Minnick's counsel's remarks at sentencing indicated that the assessment was no longer accurate.

In response to Minnick's counsel's request for a competency evaluation at the beginning of the sentencing hearing, the trial court decided to proceed while making it clear that the issue could be raised again at any time. As it happened, the hearing proceeded to completion without any indication that Minnick was incompetent. When the trial court observed that Minnick aiding counsel during the hearing and noted that his allocution "was very clear and concise[,]" Tr. p. 64, his counsel did not contradict these statements or point to any indication that he was incompetent during the hearing. Indeed, Minnick does not challenge the trial court's observations on appeal or even claim that he was actually incompetent during the hearing. At no point during the hearing was the trial court faced with any *bona fide* evidence that Minnick was incompetent, and consequently it did not abuse its discretion in failing to order another competency evaluation.[6]

## CONCLUSION

We conclude that the trial court properly imposed sentences for Minnick's robbery and rape convictions. We further conclude that the trial court did not err in failing to order another competency evaluation for Minnick. Minnick's conviction for Class A

---

[6] Minnick argues that the trial court committed procedural, but not substantive, error in not ordering an evaluation at the beginning of the hearing, essentially arguing that Minnick's actual competence during the hearing is irrelevant. We cannot accept this distinction. As we stated in *Gibbs*, "[t]he purpose of I.C. § 35–36–3–1(a) is to avoid the conviction of an incompetent defendant, so it follows that an error is harmless where it does not result in the conviction of an incompetent defendant." 952 N.E.2d at 219. Given the uncontested evidence of Minnick's competence during the hearing, any procedural error the trial court may have made could only be considered harmless.

11

felony robbery, however, violates prohibitions against double jeopardy. We reverse in part and remand with instructions for the trial court to reduce Minnick's robbery conviction to a Class B felony and impose a twenty-year sentence to run consecutively with his sixty-year sentence for murder and his fifty-year sentence for Class A felony rape, for a sum total sentence of 130 years executed.

The judgment of the trial court is affirmed in part and reversed and remanded in part with instructions.

VAIDIK, J., and CRONE, J., concur.