## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2020, 10:11 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chris M. Teagle
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandan J. Franze,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 29, 2020

Court of Appeals Case No.
20A-CR-523

Appeal from the
Blackford Superior Court

The Honorable
J. Nicholas Barry, Judge

Trial Court Cause No.
05D01-1907-F6-226

**Kirsch, Judge.**

Brandan J. Franze ("Franze") was convicted after a jury trial of battery[1] as a Class A misdemeanor and criminal recklessness[2] as a Level 6 felony and was sentenced to an aggregate sentence of 910 days executed. Franze appeals and raises the following restated issues for our review:

> I.  Whether the trial court abused its discretion when it found that there were not reasonable grounds to believe that Franze lacked the ability to understand the proceedings and assist in the preparation of his defense;
>
> II. Whether the trial court abused its discretion when it denied Franze's trial counsel's motion to withdraw and motion to continue the trial; and
>
> III. Whether Franze received ineffective assistance of trial counsel.

We affirm.

## Facts and Procedural History

On June 30, 2019, Casey Thornburgh ("Thornburgh") was spending time with his children at his ex-wife's house, and at around 10:30 p.m., he decided to leave. *Tr.* at 64. Thornburgh began walking home, and as he was walking down the sidewalk, he was stopped by Franze, who yelled, "Hey! Who are you" to Thornburgh. *Id*. at 67-68. Thornburgh asked Franze the same

---

[1] *See* Ind. Code § 35-42-2-1(c)(1), (d)(1).

[2] *See* Ind. Code § 35-42-2-2(a), (b)(1)(A).

question, and Franze identified himself by name. *Id.* at 68. Franze walked toward Thornburgh, and Thornburgh saw that Franze had what appeared to be a black handgun.[3] *Id.* at 68, 70. Franze began asking Thornburgh why Thornburgh had been underneath Franze's house, and Thornburgh repeatedly told him that he had not been under Franze's house. *Id.* at 68-69. Thornburgh told Franze that he was walking home after visiting his children, and Franze told him that he knew that Thornburgh had been to his house before, and Thornburgh said, "You're right. I had been at your house. I'm your FedEx driver. I've delivered to you a few times." *Id.* at 69. Franze said, "I knew it," and pointed his gun at Thornburgh's head. *Id.* at 70.

[4] Thornburgh then attempted to get the gun away from Franze by using his left arm to knock Franze's right arm down and trying to knock Franze to the ground. *Id.* at 70-71. When Thornburgh did this, he saw a flash of light and believed that the gun discharged, although he did not remember hearing anything. *Id.* at 73. The gun hit the ground, and Thornburgh thought to himself, "I need to get control of the gun, or I'm going to end up dead." *Id.* at 71. As Thornburgh bent down to pick up the gun, he felt Franze's arm reach around his neck and begin to choke him. *Id.* Thornburgh fell to the ground and was lying face down, but he was able to keep his hand on top of the gun. *Id.*

---

[3] The gun that the police later recovered was either a pellet gun or a BB gun that at first glance "would appear to be similar to a firearm." *Tr.* at 119, 124-25, 127, 129.

Franze continued to ask Thornburgh why he was underneath Franze's house, and Thornburgh continued to deny that he had been under the house. *Id*. The next thing Thornburgh remembered was that, "everything went black." *Id*. When Thornburgh regained consciousness, Franze was standing over him and holding the gun. *Id*. at 73. Franze asked if Thornburgh was okay, and then he told Thornburgh to "get the 'f' out of . . . there." *Id*. at 72, 90-91. Thornburgh left and called 911. *Id*. at 73.

[5] On July 2, 2019, the State charged Franze with Class A misdemeanor battery, Level 6 felony strangulation, and Level 6 felony criminal recklessness. *Appellant's App. Vol. 2* at 21-22. On December 26, 2019, Franze's trial counsel filed a motion to withdraw his appearance on the basis that Franze had failed to pay trial counsel as agreed, and that motion was denied on December 29, 2019. *Id*. at 54-55, 56. On January 2, 2020, trial counsel filed another motion to withdraw, this time alleging that there had been a breakdown of the attorney-client relationship, that Franze had failed to fulfill his obligations to his attorney, and that Franze's failure to cooperate with counsel negatively impacted counsel's ability to serve as Franze's attorney and to defend him against the charges. *Id*. at 58.

[6] The trial court held a final pretrial hearing on January 9, 2020 at which Franze's trial counsel explained that Franze had asked him to call a certain witness, and trial counsel had spoken with those witnesses who said that "they don't have anything." *Tr*. at 4, 13. Trial counsel indicated that "things are trying to be put into the witness's mouth" and that he had told Franze that he

would not "call a witness and suborn perjury." *Id*. at 13. Trial counsel explained that this disagreement was an example of why he felt that he "need[ed] to be off of this case." *Id*. Trial counsel also explained that Franze had "freaked out" when he saw templates in the case file that "had something to do with child molest" and that "he swore [trial counsel] was trying to get him for child molesting." *Id*. at 7-8.

[7] Franze began disputing the expenses for which trial counsel billed him and whether he had been provided with discovery, and at that time, trial counsel orally moved to hold a competency hearing. *Id*. at 14-15. At that time, Franze indicated that he felt like he was "having a little bit of a panic attack" and said that he did not have his medicine. *Id*. at 16. The trial court asked how long he had gone without medication, and Franze explained that he had been prescribed medication about a year before, but he did not like the medicine. *Id*. at 16-17. The trial court asked whether Franze would be able to control himself, and Franze stated that he could. *Id*. at 17. The trial court explained to Franze that at trial he would not be allowed to raise his hand and "start blurting out," and Franze indicated that he understood. *Id*. at 16. Franze then explained that he had seen documents that confused him and that they had "freaked [him] out," and he apologized. *Id*. at 17. Trial counsel told the trial court that he believed that Franze still did not understand what he had seen in his file, but Franze replied that he did understand, stating, "I grasp that you said that it is [a] blank form. Right? That you change as it fits my case?" *Id*.

[8]     As the hearing progressed, trial counsel asked to clarify whether evidence about what happened when Franze was taken into custody would be excluded from trial, and Franze objected, indicating that he thought some of this evidence was important to his case. *Id*. at 18-19. The trial court explained to Franze that he "speak[s] through [his] attorney" and that he could not "just disagree with [his] attorney" and speak out about it. *Id*. at 19. Franze replied that he understood, but trial counsel said that disagreements over what evidence should be admitted at trial were an issue for Franze and trial counsel. *Id*. The trial court said, "Well, I don't see where alternate counsel is going to remedy this, so that's the way I am looking at [this situation]." *Id*. Trial counsel stated that he understood that the trial court was denying the motion for a competency evaluation hearing and that he would be filing a written motion. *Id*.

[9]     After the hearing concluded on January 9, 2020, Franze's trial counsel filed a written motion to have Franze examined for competency. *Appellant's App. Vol. 2* at 61-62. On January 10, 2020, the trial court denied the motion and found that there were no reasonable grounds to delay the trial by having the defendant examined by a mental health examiner. *Id*. at 63-64. On January 22, 2020, a jury trial was held, and at the beginning of the trial, a hearing was held at which trial counsel renewed his motion for a competency evaluation, asserting that, at the time of the pretrial deposition of the victim, Franze "had completely devolved . . . was paranoid . . . [s]omewhat delusional" and "was not cooperating with [counsel] in preparation for [the] hearing." *Tr.* at 29-31. Trial counsel also mentioned that the officers who responded to Franze's house the

night of the incident talked about doing an emergency detainment order on Franze that night. *Id.* at 29. In response to trial counsel's argument, the trial court said, "Your client was agitated at the final pretrial. He was upset. I didn't see anything that would lead me to believe that he was not competent to understand the proceeding or assist in a defense." *Id.* at 31. The trial court further noted the following:

> Maybe there was a little bit of a personal rift going on between you and he, but . . . he has presented in Court before, as he indicated[,] for infraction trials. He's understood the proceedings, and that wasn't too long ago within the past six, eight months. He understood the proceedings. He was able to understand the Court's ruling, understand the evidence. At one time at the final pretrial, he objected. . . . I just didn't see anything that would lead me to believe that he didn't understand.

*Id.*

[10]   During this exchange, Franze had not yet appeared for the trial, and the trial court offered trial counsel an opportunity to move to continue the jury trial. *Id.* at 32. Franze eventually arrived, and the trial proceeded. *Id.* at 35. After voir dire was completed, trial counsel renewed his motion to have Franze's competency evaluated and asked for the trial court to "take some testimony from [Franze] concerning the jury." *Id.* at 36. The trial court then questioned Franze under oath and outside the presence of the jury. *Id.*

[11]   During this questioning, Franze stated that he was thirty-three years old, able to recall his address, explained that he had lived at his address for over two years,

and advised that the highest level of education he completed was tenth grade. *Id*. at 36-37, 39. Franze indicated that he understood what took place during jury selection, "We sat down. We went through, we done [sic] jury selection. He, obviously, both sides struck . . . and got rid of whoever felt like they needed to get rid of. But, and then now . . . we're at recess." *Id*. at 37. Franze then explained that he knew that the trial was coming up next and that the hearing was occurring because he "had an issue with a few people that was [sic] on the jury." *Id*. Franze thought that one of the jurors had been a coworker and friend of his estranged wife. *Id*. The trial court noted that it had observed Franze conferring with his attorney, and Franze confirmed that he had discussed the prospective jurors with trial counsel, that he did not believe that he had enough time to discuss the potential jurors, but that he did understand what was going on. *Id*. at 38-39. Franze added, "Like I understand, because I've done this with you guys before. But what I don't understand is how quickly and unprepared I was with jury. Picking the jury. Who was on there? How they relate in my life." *Id*. at 39. The trial court confirmed with Franze that he has participated in a jury trial as a defendant in the past and that he was able to communicate with his attorney, voice his concerns, and participate with his attorney. *Id*. at 39-40. Franze also said that he understood that his trial counsel had moved to evaluate whether he was competent to stand trial. *Id*. at 40. After concluding the hearing, the trial court found that

> there [is] not sufficient reasonable justification to order a
> competency exam for the defendant. The defendant seems, in
> the opinion of the Court; while he may not agree with the jury,

he is able to understand the nature [of the] proceedings as far as where we are in trial proceedings. Where we are headed, and he does have the ability to participate in his defense with his attorney.

*Id.* at 43. The trial court then denied trial counsel's motion for a competency evaluation. *Id.*

[12] A short time later, but before the trial began, Franze indicated that he was "having a little trouble understanding" the proceedings. *Id.* at 45. The trial court explained in detail how the trial could proceed. *Id.* at 45-47. Franze stated that he thought that maybe he did need to be evaluated as to whether he could stand trial because he was "missing" some of what had happened and did not feel like he was "prepared." *Id.* at 47. The trial court concluded that based on Franze's testimony under oath, that it was "finding that [Franze] do[es] have ability to participate in [his] defense and understand the proceedings" and that Franze was competent to stand trial. *Id.* at 48, 50.

[13] At the conclusion of the jury trial, Franze was found guilty of Class A misdemeanor battery and Level 6 felony criminal recklessness but not guilty of Level 6 felony strangulation. *Appellant's App. Vol. 2* at 129-31. The trial court sentenced Franze to 365 days for his battery conviction and 910 days for his criminal recklessness conviction, to be served concurrently for an aggregate executed sentence of 910 days. *Id.* at 150-52. Franze now appeals.

# Discussion and Decision

# I.    Competency to Stand Trial

[14]    We have previously determined that "the conviction of an incompetent defendant is a denial of federal due process and a denial of a state statutory right as well." *Faris v. State,* 901 N.E.2d 1123, 1125 (Ind. Ct. App. 2009), *trans. denied*. A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense. *Mast v. State,* 914 N.E.2d 851, 856 (Ind. Ct. App. 2009), *trans. denied*. Indiana Code section 35-36-3-1 states in pertinent part:

> (a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested:
>
> (1) psychiatrists;
>
> (2) psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology; or
>
> (3) physicians;
>
> who have expertise in determining competency. . . .

Ind. Code § 35-36-3-1(a). However, the right to a competency hearing is not absolute. *Minnick v. State,* 965 N.E.2d 124, 131 (Ind. Ct. App. 2012), *trans. denied*. Instead, such a hearing is required only when a trial court is confronted with evidence creating a reasonable or *bona fide* doubt as to a defendant's competency. *Id.* The trial court judge's observations of a defendant in court can serve as an adequate basis for finding that a competency hearing is not necessary. *Gibbs v. State*, 952 N.E.2d 214, 220 (Ind. Ct. App. 2011), *trans. denied*. Although Indiana Code section 35-36-3-1 contains provisions for the appointment of medical professionals, those procedures "are only required under [the statute] if 'the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense.'" *Cotton v. State*, 753 N.E.2d 589, 591 (Ind. 2001) (quoting Ind Code § 35-36-3-1).

[15] The decision regarding whether there is a reasonable doubt is within the trial court's discretion and depends upon the specific facts and circumstances of each case. *Minnick*, 965 N.E.2d at 131. We will only reverse the trial court's decision if we find that the trial court has abused its discretion. *Id*. The trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Id*. at 131-32.

[16] Franze argues that the trial court abused its discretion when it failed to conduct an evidentiary hearing pursuant to Indiana Code section 35-36-3-1 as to his competency to stand trial. Franze contends that the statements made by his

trial counsel that Franze was "devolved, paranoid, and delusional and incompetent to stand trial," during the final pretrial hearing and the statement of the responding officers about obtaining an emergency detainment order for him on the night of the crimes, together with Franze's statements regarding the treatment he had received for his psychological problems and the medications he had been prescribed all point to reasonable grounds for a competency hearing to be held. He further asserts that there were reasonable grounds to believe he could not understand the proceedings and assist in the preparation of his defense, and that although the trial court made some effort to conduct a hearing in accordance with the statute, it only questioned Franze as to his understanding of the jury trial process but failed to inquire as to whether or not Franze could effectively assist his counsel in the preparation of his defense and failed to appoint medical professionals as set forth in the statute.

[17] In the present case, trial counsel made several requests for the trial court to order a competency evaluation for Franze, including an oral motion at the final pretrial hearing, a written motion the same day, and another oral motion on the morning of the jury trial. At the final pretrial hearing, in the written motion on the same date, and in an oral motion at a pretrial hearing on the morning of the jury trial, trial counsel mainly focused on his interactions with Franze during trial preparation, and trial counsel's concerns focused on differences of opinion that Franze had about what evidence should be admitted at trial and what witnesses should be called to testify and that there was an issue where Franze observed a blank template for a motion in limine that referred to child

molesting in his file and "freaked out." *Tr.* at 8, 15-16, 17, 19, 29-31; *Appellant's App. Vol. 2* at 61-62. Franze explained that he had seen documents that confused him and that they had "freaked [him] out," and he apologized. *Id.* at 17. Trial counsel told the trial court that he believed that Franze still did not understand what he had seen in his file, but Franze replied that he did understand, stating, "I grasp that you said that it is [a] blank form. Right? That you change as it fits my case?" *Id.*

[18] On the morning of the jury trial, trial counsel stated that at the time of the pretrial deposition of the victim, Franze "had completely devolved . . . was paranoid . . . [s]omewhat delusional" and "was not cooperating with [counsel] in preparation for [the] hearing." *Tr.* at 29-31. Trial counsel also mentioned that the officers who responded to Franze's house the night of the incident talked about doing an emergency detainment order on Franze that night. *Id.* at 29. After the completion of voir dire, trial counsel renewed his motion for a competency evaluation based on statements Franze had made to him about the jury. *Id.* at 36. The trial court permitted trial counsel to examine Franze under oath outside the presence of the jury, and the trial court followed up with questions of its own. *Id.* at 36-43. When Franze realized that he did not fully understand the trial court's separation of witnesses order, he renewed the request for a competency evaluation himself. *Id.* at 44-45.

[19] Although Franze appeared to have experienced stress or anxiety about the criminal proceedings, he was capable of listening to his trial counsel and providing information to assist his trial counsel. *Id.* at 9-10, 31, 38, 40. During

the questioning of Franze, he stated that he was thirty-three years old, able to recall his address, explained that he had lived at his address for over two years, and advised that the highest level of education he completed was tenth grade. *Id*. at 36-37, 39. Franze indicated that he understood what took place during jury selection, and explained that he knew that the trial was coming up next and that the hearing was occurring because he "had an issue with a few people that was [sic] on the jury," which included that he thought that one of the jurors had been a coworker and friend of his estranged wife. *Id*. at 37. The trial court noted that it had observed Franze conferring with his trial counsel, and Franze confirmed that he had discussed the prospective jurors with trial counsel and that he did not believe that he had enough time to discuss the potential jurors, but that he did understand what was going on. *Id*. at 38-39. Franze added, "Like I understand, because I've done this with you guys before. But what I don't understand is how quickly and unprepared I was with jury. Picking the jury. Who was on there? How they relate in my life." *Id*. at 39. The trial court confirmed with Franze that he has participated in a jury trial as a defendant in the past and that he was able to communicate with his current trial counsel, voice his concerns, and participate with counsel. *Id*. at 39-40. Franze also said that he understood that his counsel had moved to evaluate whether he was competent to stand trial. *Id*. at 40.

[20]   The record showed that Franze was capable of listening to what his trial counsel was telling him and communicate with him. It showed that Franze was able to understand what his counsel told him regarding the

misunderstanding about the template and acknowledge that he made a mistake and apologize for freaking out. Similarly, after the completion of voir dire, Franze was able to discuss with his trial counsel and to articulate to the trial court that he believed that one of the jurors might have been a friend and colleague of his estranged wife. *Id*. at 36-38, 41. While Franze may have not have given a perfect description of jury selection, he was able to explain in simple terms what had transpired and that he understood the purpose of jury selection and would be able to assist his attorney. *Id*. at 37. By stating that he was concerned that one of the jurors may have known his wife, Franze demonstrated that he was able to assist in his own defense. The trial court's questioning of Franze was an appropriate way to determine if reasonable grounds existed for believing that he lacked the ability to understand the proceedings and assist in the preparation of a defense.

[21] When the trial court explained the trial procedure to Franze and that the attorneys would be presenting opening arguments, the jury would be instructed, evidence would be presented, and the jury would decide the case, Franze said that he understood that general procedure because he had "done this . . . before." *Id*. at 39. Although Franze stated that he was not sure if he was "doing it right," he advised the trial court that he was able to "participate with [his] attorney." *Id*. at 40. As the trial court pointed out, the standard is not whether Franze had a perfect understanding. *Id*. at 39. The record showed that Franze was able to understand the proceedings in general.

Based on the record before us, there was ample support for the trial court's determination that there were no reasonable grounds to believe that Franze lacked the ability to understand the proceedings and to assist in the preparation of his defense. We conclude that the trial court did not abuse its discretion by denying Franze's motion for a competency evaluation.

## II.    Motion to Withdraw and Motion to Continue

Franze argues that the trial court abused its discretion when it denied his trial counsel's motion to withdraw his appearance and a motion to continue. Whether to allow counsel to withdraw is within the trial court's discretion, and we will reverse only when denial constitutes a clear abuse of discretion and prejudices the defendant's right to a fair trial. *Bronough v. State*, 942 N.E.2d 826, 829 (Ind. Ct. App. 2011), *trans. denied*. The decision whether to grant a continuance when the motion is not based on statutory grounds is within the discretion of the trial court. *Jones v. State*, 957 N.E.2d 1033, 1042 (Ind. Ct. App. 2011). We will not reverse such a decision absent a clear showing that the trial court has abused its discretion, and the appellant must overcome a strong presumption that the trial court exercised its discretion properly. *Id.* Further, the defendant must establish that he was prejudiced because of the trial court's denial of his motion. *Id*.

Franze asserts that the trial court abused its discretion when it denied his trial counsel's motion to withdraw his appearance. Franze contends that the evidence presented showed a breakdown in the attorney-client relationship

between him and his trial counsel that showed that neither of them was prepared for the jury trial. He, therefore, contends that the trial court should have granted the continuance and motion to withdraw or in the alternative granted the motion to continue to ensure that Franze had legal counsel who was adequately prepared to represent him at trial.

[25] Initially, Franze has waived appellate review regarding trial counsel's motion to withdraw his appearance because he has failed to raise a cogent argument. The only case he relies upon in his argument is *Parr v. State*, 504 N.E.2d 1014 (Ind. 1987). *Parr* did not involve the denial of an attorney's motion to withdraw an appearance and, instead, involved the denial of a motion to continue filed by a defendant who wished to obtain private counsel. *Id.* at 1016. Therefore, Franze has failed to advance a cogent argument with citations to the legal standard for reviewing denials of motions to withdraw an appearance. *See* Ind. Appellate Rule 46(A)(8)(a); *see also Mallory v. State*, 954 N.E.2d 933, 936 (Ind. Ct. App. 2011) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

[26] Waiver notwithstanding, Franze has not shown that he was prejudiced by the denial of his attorney's motion to withdraw his appearance. "[A] defendant must demonstrate that he was prejudiced before we may reverse because the trial court denied counsel's motion to withdraw." *Bronough*, 942 N.E.2d at 830. Here, Franze asserts only that neither trial counsel nor Franze "believed that [trial counsel] was prepared to try the case." *Appellant's Br.* at 13. Franze does

not contend, or provide any citations to the record to demonstrate, that trial counsel was actually unprepared to try the case at trial. We, therefore, conclude that he has not shown that he was prejudiced by the denial of the motion to withdraw appearance and trial counsel's continued representation of him.

As to his argument regarding the motion to continue, Franze seems to assume that trial counsel's request to continue the case related to his motion to withdraw. However, the record does not support this assumption. In support of his contention that the trial court abused its discretion, Franze cites to page 32 of the transcript. *Appellant's Br.* at 12. The motion to continue referenced on that page came after Franze had failed to appear on the morning of the trial, and the trial court inquired as to whether trial counsel would like to move for a continuance due to Franze's absence. *Tr.* at 32. However, when Franze was located, the jury trial went forward, and the issue of whether a continuance should be granted due to Franze's absence became moot. Therefore, the trial court did not abuse its discretion by not granting a motion to continue the trial after Franze had appeared for trial and the basis for the continuance no longer existed and when the motion was not renewed on any other basis. We conclude that the trial court did not abuse its discretion when it denied trial counsel's motion to withdraw his appearance or his motion to continue.

## III. Ineffective Assistance of Counsel

"The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel and mandates that the right to counsel is the

right to the effective assistance of counsel." *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019). "We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*." *Rondeau v. State*, 48 N.E.3d 907, 916 (Ind. Ct. App. 2016) (citing *Strickland v. Washington,* 466 U.S. 668, 698 (1984)), *trans. denied*. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation fell short of prevailing professional norms, and (2) counsel's deficient performance prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 698. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Rondeau*, 48 N.E.3d at 916 (quoting *Strickland*, 466 U.S. at 698). "The two prongs of the *Strickland* test are separate and independent inquiries." *Id*. (citing *Strickland*, 466 U.S. at 697). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id*. (quoting *Strickland,* 466 U.S. at 697).

[29] Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Whitener v. State,* 696 N.E.2d 40,

42 (Ind. 1998)), *trans. denied*. Isolated omissions or errors, poor strategy, or bad tactics do not necessarily render representation ineffective. *McCullough*, 973 N.E.2d at 74.

[30] Franze argues that he received ineffective assistance of his trial counsel. He alleges that his trial counsel was ineffective because he was not prepared to adequately defend Franze at trial, had advised the trial court that he believed that Franze wanted trial counsel to suborn perjury, and had stated to the trial court that Franze was devolved, paranoid, and delusional. Franze asserts that the most glaring deficiency was that trial counsel's statement to the trial court that Franze wanted counsel to call witnesses and suborn perjury. Franze thus contends that "there is no way that the sentence imposed could be reliable" because the trial court could not have "possibly give[n] the same weight to the evidence presented by Franze at the sentencing hearing when [it] had previously been informed by Franze's counsel that Franze wished for counsel to suborn perjury." *Appellant's Br*. at 15. Franze argues that his convictions should be therefore reversed.

[31] As to Franze's contentions that his trial counsel was ineffective for not being prepared to adequately defend Franze at the trial and making the statement to the trial court that Franze was devolved, paranoid, and delusional, he has failed to develop these claims with any argument supported by cogent reasoning and citation to authorities pursuant to Indiana Appellate Rule 46(A)(8)(a). As such, Franze has waived this argument for appellate consideration. *See Davis v. State,* 835 N E.2d 1102, 1113 (Ind. Ct. App. 2005) (providing that failure to make a

cogent argument results in waiver), *trans. denied; see also* App. R. 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal).

[32] "The two prongs of the Strickland test are separate and independent inquiries." *Rondeau*, 48 N.E.3d at 916. "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697). As to his contention that his trial counsel was ineffective for advising the trial court that he believed that Franze wanted trial counsel to suborn perjury, Franze argues that "there is no way that the sentence imposed could be reliable," *see Appellant's Br.* at 15, which is not the standard for determining whether his convictions should be set aside and a new trial ordered. *See Strickland*, 466 U.S. at 698. The relief Franze requests in his appeal is the reversal of his convictions, not remand for a new sentencing hearing. *See Appellant's Br.* at 15. Franze has not shown how his claim of prejudice at sentencing is connected to his requested relief of reversal of his convictions. His claim of prejudice on this contention is therefore waived for failure to make a cogent argument. App. R. 46(A)(8)(a).

[33] However, even if Franze had argued that there was a reasonable probability that the outcome of his trial would have been different had his trial counsel not advised the trial court that he believed that Franze wanted him to suborn perjury, the record does not support such a claim because Franze was convicted

after a jury trial. Trial counsel made the challenged statement to the trial court at the final pretrial hearing held on July 9, 2019. *Tr.* at 2, 13. The jury was not sworn in for trial until July 22, 2020. *Id.* at 21, 23. Therefore, Franze has not shown a reasonable probability of a different outcome at trial -- that the jury would not have convicted him -- but for the fact that trial counsel told the trial court he believed that Franze wanted him to suborn perjury. As Franze cannot show that the result of the trial would have been different or that he suffered any prejudice, he has not shown that he received ineffective assistance of trial counsel.

[34]    Affirmed.

Pyle, J., and Tavitas, J., concur.